AO 91 (Rev. 11/11)  Criminal Complaint

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 09 2014

JULIA S DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
### for the
### Western District of Virginia

| | |
|---|---|
| United States of America<br>v.<br><br><br><br>KEVIN C. MOORE<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 7:14mJ99 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___June 2014 through August 2014___ in the county of ___Roanoke and others___ in the

___Western___ District of ___Virginia___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 201 | Bribery |
| 18 USC 1512(c)(2) | Obstruction of Justice |

This criminal complaint is based on these facts:

**See attached affidavit**

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Joen Dodge, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/09/2014___

_____
*Judge's signature*

OCTOBER 9, 2014
_____
*Printed name and title*

GLEN E. CONRAD
CHIEF U.S. DISTRICT JUDGE

City and state: ___Roanoke, VA___

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**OCT 0 9 2014**

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

UNITED STATES OF AMERICA,
Plaintiff,

v.

KEVIN C. MOORE,
Defendant.

**Filed Under Seal**

7:14mj99

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

I, Joan Dodge, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for more than 16 years.    I have investigated numerous sexual exploitation cases (mainly sexual exploitation of children) and have served as the affiant on numerous affidavits.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that KEVIN C. MOORE, a Salem City Police Officer and a federally deputized member of a Drug Enforcement Administration (DEA) Task Force, violated Title 18 U.S.C. §201, which makes it a crime for a public official, directly or indirectly, to corruptly demand, seek, receive, accept, or agree to receive or accept anything of value

personally or for any other person or entity, in return for being influenced in the performance of any official act;[1]  and Title 18 U.S.C. §1512 (c)(2), which makes it a crime for anyone to corruptly obstruct, influence or impede any official proceeding, or to attempt to do so.

## PROBABLE CAUSE

4.     In September of 2014, a cooperating witness awaiting sentencing in a federal case involving drug violations, (hereafter "CW") informed Annette Cox, the Victim Witness Coordinator for the United States Attorney's Office, Western District of Virginia (USAO-WDVA), that KEVIN C. MOORE, a DEA Task Force Officer from the Salem Police Department, (TFO MOORE),  solicited the CW to have sex with him in exchange for a favorable sentencing recommendation with the Assistant United States Attorney assigned to her case.  In addition to providing a statement, the CW provided copies of her text messages and consent to the FBI to download the contents of her cellular telephone.

5.     Beginning in April 2014, the CW and TFO MOORE communicated with cellular telephone calls and text messages.  During these communications the CW used cellular phone number 276-237-7268, assigned to U.S. Cellular and TFO MOORE used cellular phone number 540-537-5345, assigned to Verizon Wireless.  During these text conversations, TFO MOORE informed the CW that he was in a position to help her with her case, and in August 2014, TFO MOORE made clear to  the CW that a sexual relationship could yield a favorable sentencing recommendation to the Assistant United States Attorney.

6.     On June 6, 2014, the CW texted that she was worried about having the possibility of "40 years & two 1 million $ fines over my head" and TFO MOORE responded, "Well don't

---

[1] See United States v. Marmolejo, 89 F. 3d 1185, 1192 (5th Cir. 1996) (finding that the term "anything of value" includes transactions involving intangible items such as conjugal visits).

worry about that I will do all I can to help you out with that."   TFO MOORE also encouraged the CW by texting "Yes you stay on the right track because believe it or not you have a lot going for you.  You being drug free is awesome girl and I'm very proud of you."

7.      TFO MOORE became more personal with the CW and on June 8, 2014, texted the CW "Behave yourself and I will see you then.  Lol" (referring to a meeting) to which the CW responded "K lol I will." TFO MOORE then responded "Yeah I bet.  Lol . . . wild than. Lol. . . Thang. . . Just kidding with you.  You have been a good girl." The CW assumed TFO MOORE was referring to her former drug usage when he called her a "wild thang" and responded, "I was kinda out there for a while I guess lol...." TFO MOORE then texted, "I bet you were something else.  Lol."

8.      Later that month, TFO MOORE progressively used more suggestive innuendo with the CW.  For instance,  on June 26, 2014, TFO MOORE texted the CW "I'm going to take care of you as long as you take care of me." In turn, the CW responded, "I appreciate it and I will do whatever u need me to do so don't worry bout [sic] that!" TFO MOORE responded, "That's what I'm talking about girl.  Lol." Later that day, TFO MOORE texted the CW, "You need to release some stress". The CW responded, "...yea I most definitely need to release some stress lol...just not sure how to do it I'd like to know". TFO MOORE then texted, "Oh I bet...You can figure out something I know.  Lol".

9.      The next day, on June 27, 2014, TFO MOORE and the CW discussed an upcoming case-related meeting and the CW's application for employment at a Hampton Inn. TFO MOORE texted "Well you want to meet there [referring to Hampton Inn].  Lol" to which the CW responded "Lol u tell me."

10. On June 28, 2014, the CW and TFO MOORE discussed the CW's difficulties in finding a job because of her criminal record. TFO MOORE texted the CW "Well everyone makes a mistake in their life because no one is perfect. So they should not hold that against you. Like I said take care of me and I will do what I can for you."

11. On August 8, 2014, TFO MOORE informed the CW "you are a good girl. . . I'm going to do all I can for you." The CW responded "Thank you I'm very grateful." In turn, TFO MOORE responded "You owe me. Lol." Later that day, TFO MOORE reminded the CW, "Hey don't you forget about me because you owe me. Lol". The texting continued for the next few days and TFO MOORE texted her that they needed to "meet about what you are going to do for me. Lol".

12. On August 14, 2014, TFO MOORE and the CW discussed places where they could meet on the following day. TFO MOORE pressed the CW to choose a meeting place and the CW texted that she did not know where. After TFO MOORE again told her to choose a place, she replied, "But you're the boss lmao". TFO MOORE responded, "Lmao. Oh no I'm not...I will be the boss when we meet. Lol". However, the CW backed out of the meeting because she was scared. On August 15, 2014, TFO MOORE texted her, "Ok what happened. I spoke up for you today." The CW texted that she was too busy because her mother was out of town. TFO MOORE responded, "Just trying to look out for you like I said I would." The CW then texted, "Thank you and I won't forget about ya promise k [sic] sorry again about today" and asked, "So do u know any of my fate yet like how bad it's gonna be lol" TFO MOORE responded, "I'm still trying to do my best, Dont know for sure yet." He added, "You better make it up to me. Lol". After the CW apologized again, TFO MOORE texted, "You better make it up big time."

4

13.     The next day, August 16, 2014, TFO MOORE again texted, "You owe me a real good one tho", and the CW responded, "Yes I know". The CW subsequently texted that she was feeling a little anxious, and TFO MOORE replied, "You should". He then reminded her, "Yeah I will recommend what I think you should get and then the us attorney and you [sic] attorney will get together and present what they think to the judge." He further texted, "I'm talking a lot for you tho [sic]" (referring to talking to the AUSA) and "You have a real good attorney and I'm going to help you out as much as I can." The CW thanked TFO MOORE for helping her and TFO MOORE responded, "I told you I will do what I can but you have to work with me girl." She replied, "I will" to which he responded, "When when when when. !!!!!!!!. Lol". Later that evening, the CW questioned TFO MOORE, "Well I actually find it a lot hard [sic] to believe so much so that I've questioned myself this whole time wondering if we're on the same page as to what ur wanting. . . am I on the right path or completely lost" TFO MOORE responded, "You are right on track."

14.     On August 17, 2014, TFO MOORE reminded the CW through text, "You need to impress me tho [sic]. Lol". The CW asked, "Well what would impress you?" and TFO MOORE responded, "A whole lot. Lol." The CW asked, "Like?", and TFO MOORE responded, "Everything. Lol." CW then responded, "That doesn't tell me much lmao….u just gonna leave me in the dark". TFO MOORE replied, "U know girl. Everything! !!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!" The CW responded "Well now that explains more." TFO MOORE replied, "You should know. I want it all", then "[d]on't bring half of it I want it all. Lol"

15.     On August 20, 2014, TFO MOORE directed the CW to find a place to meet the following day because TFO MOORE did not know the area. The CW suggested a Quality Inn in

5

Southwestern Virginia, provided TFO MOORE some details about its location, and TFO MOORE responded "I'm licking my chops now. Lol". The CW and TFO MOORE discussed the price of the room, but TFO MOORE did not "want to spend that much for a couple of hours." The CW offered and was able to use her hotel points for the room and made a reservation. The CW texted TFO MOORE at 10:47pm that night stating she had reserved a room. During this text conversation they agreed to meet at 11:30am the next day.

16.    On August 21, 2014, the CW texted TFO MOORE that she was nervous and scared and TFO MOORE suggested they "just meet somewhere and talk about some things until you get over your fear." That day, at approximately noon, they met at a McDonalds and drove approximately six miles in TFO MOORE's government vehicle to the back parking lot of a BP Gas Station in Southwestern, VA, where she performed oral sex on him. Afterward, TFO MOORE drove the CW back to the McDonalds, where they parted ways. The CW estimated that, from the time they met at McDonalds to the time TFO MOORE dropped her off at McDonalds, was less than an hour.

17.    On September 26, 2014, a search warrant was executed on Verizon Wireless for data relating to 540-537-5345, the cellular telephone used by TFO MOORE. Subscriber information showed the number was subscribed to by the DEA. Text message logs, which show the times and dates of incoming and outgoing text messages, as well as the phone numbers of the sending and receiving parties, were also obtained with the warrant. All of the text messages between the CW and TFO MOORE that were obtained from the forensic exam of the CW's phone also appear on the text message logs from TFO MOORE's phone number.

18.    Video surveillance footage for August 21, 2014 was obtained from both the McDonalds where they met and the BP station behind which the sex act allegedly took place.

On the McDonald's video surveillance, a vehicle consistent with TFO MOORE's government vehicle (license plates and drivers' faces cannot be discerned on the video) pulled into a parking space there at approximately 11:24am on that day. According to the text messages from the CW's phone, TFO MOORE texted the CW, "I'm here" at 11:25am. The vehicle remained parked there for approximately 11 minutes, and no one could be seen getting out of or into the vehicle. The vehicle pulled out of the space and left at approximately 11:35am. At approximately 11:43am, a vehicle that appeared to be consistent with TFO MOORE's government vehicle drove toward the gravel parking lot across from McDonalds (most of the gravel lot is not captured on the video). Between 11:25am and 12:07pm, TFO MOORE and the CW exchanged several text messages about where the CW was. At 12:07pm, the CW texted that she was close and asked what kind of vehicle TFO MOORE was driving. He responded with a description of his government vehicle. At approximately 12:09pm, the McDonalds surveillance video showed a car consistent with the CW's car entering the parking lot, circling around, then parking in a space in the lot at 12:10pm. At 12:10pm, TFO MOORE texted the CW "I'm over here in the gravel lot." Approximately 30 seconds after the aforementioned car parked in a space, the car pulled out and drove toward the gravel lot to an area out of view of the camera. At approximately 12:12pm, a vehicle consistent with TFO MOORE's government vehicle left the parking area.

19.    Video surveillance footage for August 21, 2014 from the BP station, located approximately six miles from the McDonalds, showed a vehicle consistent with TFO MOORE's government vehicle entering the north entrance to the station and driving toward the back parking lot at approximately 12:20pm. There is no video coverage of the back lot and the

surveillance footage does not capture the vehicle leaving the station (there is no surveillance coverage of the station's south entrance/exit).

20.     The McDonalds surveillance video for August 21, 2014 showed a vehicle that is consistent with TFO MOORE's vehicle entering the parking lot and driving toward the gravel lot and then out of view at approximately 12:48pm.  Such a vehicle could be seen leaving at approximately 12:50pm, and a vehicle that appeared to be consistent with the CW's vehicle could be seen leaving at 12:51pm.  The CW stated that she remembered texting her mother shortly after she got back into her own car, and her phone records showed that she texted her mother at 12:56pm.

21.     In September 2014, I asked the CW how she had booked the room reservation at the Quality Inn and she stated that she booked it via Internet.  She forwarded me an email confirmation for the reservation that was sent to her from Quality Inn on August 20, 2014 at 10:43pm.  This is consistent with the CW's text messages, where she texted TFO MOORE at 10:47pm that night stating she had reserved a room.  The confirmation email shows that, when she made the reservation, she wrote that she was "desperately needing an early check-in preferably for 11:30A.M. but at least by 12 noon at the latest."  The CW also logged into her "Choice Privileges" account (hotel rewards club) and showed me in the account history that she cancelled the reservation on August 21, 2014 after the encounter with TFO MOORE.

22.     On September 5, 2014, TFO MOORE and the CW exchanged text messages discussing her sentencing.  TFO MOORE texted her that the Assistant United States Attorney had already knocked a lot of the drug weight off and added, "Also you will get consideration for the st iffy you have already done and more for whatever else you are able to do."  On September 30, 2014, TFO MOORE contacted the CW via text message and asked her how she was doing.

The CW responded that she was concerned about her upcoming sentencing.  TFO MOORE

replied, "No I haven't forgot about you.  You will receive your credit at the sentencing hearing.

So you will get that then.  I'm trying all I can for you."


## CONCLUSION

23.     Based on the forgoing, I submit there is probable cause to believe that TFO

MOORE violated Title 18 U.S.C. §201 and Title 18 U.S.C. §1512 (c)(2) .

Respectfully submitted,

Joan Dodge
Special Agent
FBI


Subscribed and sworn to before me this 9th day of OCTOBER , 2014

CHIEF U.S. DISTRICT JUDGE

9